# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **ALPHA BELL DAVIS,** | ) |
| Plaintiff, | ) ) ) |
| vs. | ) )  Civil Action Number )  **2:10-cv-2606-AKK** |
| **HILDA SOLIS, Secretary, UNITED STATES DEPARTMENT OF LABOR,** | ) ) ) ) |
| Defendant. | ) |

## MEMORANDUM OPINION

Plaintiff Alpha Bell Davis ("Plaintiff") brings this civil action against Hilda Solis, Secretary of the United States Department of Labor ("Defendant"), alleging gender and race discrimination and retaliation. Doc. 17. Defendant filed a Motion For Summary Judgment, docs. 13 & 14, which is fully briefed, docs. 17 & 18, and is due to be **GRANTED**.

## I. SUMMARY JUDGMENT STANDARD OF REVIEW

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." To support a summary judgment motion, the parties must cite to "particular parts of

materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c). Moreover, "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of proving the absence of a genuine issue of material fact. *Id.* at 323. The burden then shifts to the nonmoving party, who is required to "go beyond the pleadings" to establish that there is a "genuine issue for trial." *Id*. at 324 (citation and internal quotation marks omitted). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). The court must construe the evidence and all reasonable inferences arising from it in the light most favorable to the non-moving party. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970); *see also Anderson*, 477 U.S. at 255 (all justifiable inferences must be drawn in the non-moving party's favor). However, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v.*

*England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (per curiam) (citing *Bald Mountain Park, Ltd. v. Oliver*, 863 F.2d 1560, 1563 (11th Cir. 1989)).  Moreover, "[a] mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party."  *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson*, 477 U.S. at 252).

## II.  FACTUAL BACKGROUND

The Department of Labor, Occupational Safety and Health Administration ("OSHA"), employs Plaintiff, an African American female, as an "Industrial Hygienist" in its Birmingham office.  Doc. 15-1, at 5-6; doc. 16-10, at 2.  The events in this case are based on an evaluation Plaintiff received in 2007, when she reported directly to Harold Ciancio ("Ciancio"), a Caucasian male, who, in turn, reported to Plaintiff's second level supervisor and area manager, Roberto Sanchez ("Sanchez"), a Hispanic male.  Doc. 16-1, at 9.  Ciancio supervised a "response team" comprised of  two industrial hygienists (Plaintiff and Horace McCann ("McCann"), an African American male) and three safety specialists (Carrie Dooley ("Dooley"), an African American female; Edmund Keith ("Keith"), a Caucasian male; and Ronald Hynes ("Hynes"), a Native American male), collectively referred to as "Compliance Safety and Health Officers."  Doc. 15-1, at

10; doc. 16-1, at 6-9.

The key issue of contention in this case is the rating Ciancio issued the response team in 2007 and which Sanchez approved. Doc. 15-1, at 10-11; docs. 16-5 to 16-9. Ciancio determined the performance ratings by rating each individual on three different elements: (1) building partnerships, (2) on-site inspection, and (3) case management. Docs. 16-5 to 16-10. The performance ratings, from highest to lowest, were: (1) Exemplary, (2) Highly Effective, (3) Effective, (4) Minimally Satisfactory, and (5) Unacceptable. Doc. 16-5, at 2. To receive an "Exemplary" rating, an employee must have exceeded the standards on the three elements and OSHA's Regional Office in Atlanta had to approve the rating. *Id.*; doc. 16-3, at 5. For a "Highly Effective" rating, an employee needed to exceed the standards on 50% or more of the elements, and meet the standards for the remainder. Doc. 16-1, at 4.

In her 2007 appraisal, Plaintiff exceeded the standards for elements two and three, and met the standards for element one – building partnerships – and consequently received a "Highly Effective" rating. Doc. 16-5, at 4. McCann, the other industrial hygienist on the response team, received an "Effective" rating. Doc. 15-1, at 10; doc. 16-6, at 2. The safety specialists' ratings slightly varied: Dooley and Keith received "Effective" and Hynes received "Exemplary." Doc.

16-7; doc. 16-8.  Thus, Hynes is the only response team member who rated higher than Plaintiff, but Plaintiff received the highest rating for industrial hygienists. Doc. 16-9, at 2.  As a result of the appraisals, Hynes received a $4,375.00 bonus and Plaintiff received $3,005.00.  Doc. 16-3, at 4.  Plaintiff challenged Hynes' rating and bonus with the Equal Employment Opportunity Commission on December 30, 2007, alleging race and gender discrimination and retaliation.  Doc. 16-12, at 2.  After receiving her right-to-sue, Plaintiff filed this lawsuit.

### III.  ANALYSIS

Plaintiff contends that Defendant discriminated against her on the basis of race and gender by (1) rating her "Highly Effective" instead of "Exemplary," doc. 1; doc. 15-1, at 14, and (2) treating her less favorably than similarly situated non-African American male employees concerning assignments, doc. 17, at 6-7. Additionally, Plaintiff contends Defendant issued her the "Highly Effective" rating, in retaliation for Plaintiff submitting an affidavit in another employee's discrimination complaint in April 2006.  Doc. 15-1, at 20-21.  The court addresses each contention below.

#### A.   *Race and Gender Discrimination Claims*

The court applies the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), for Plaintiff's race and gender

discrimination claims since this is a circumstantial evidence case. Under that framework, Plaintiff must first create an inference of discrimination by establishing a *prima facie* case. *Burke-Fowler v. Orange Cnty., Fla.*, 447 F.3d 1319, 1323 (11th Cir. 2006) (citation omitted). If Plaintiff satisfies her initial burden, "then the defendant must show a legitimate, non-discriminatory reason for its employment action." *Id*. (citation omitted). "If it does so, then the plaintiff must prove that the reason provided by the defendant is a pretext for unlawful discrimination." *Id*. (citation omitted). However, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Springer v. Convergys Customer Mgmt. Grp. Inc.*, 509 F.3d 1344, 1347 (11th Cir. 2007) (citation omitted).

> **1.    Defendant's Alleged Discrimination by Rating Plaintiff "Highly Effective" and not "Exemplary."**

Plaintiff challenges the "Highly Effective" rating Defendant issued her and contends that "Defendant's failure to award an 'Exemplary' rating to [her] was a pretext for unlawful race [and] gender discrimination." Doc. 1, at 4; *see also* doc. 17, at 6-7. Specifically, Plaintiff asserts that her inability to receive an "Exemplary" rating is due to Ciancio's assignment of "(1) Hurricane and Safety

initiatives and (2) Fatalities to males and non-minority members." Doc. 17, at 6-7. As a threshold matter, the court notes that Plaintiff's disagreement with her "Highly Effective" rating does not automatically trigger a discrimination finding because courts must be "careful not to allow . . . plaintiffs simply to litigate whether they are, in fact, good employees." *Alvarez v. Royal Atl. Developers, Inc.*, 610 F.3d 1253, 1266 (11th Cir. 2010). Stated differently, this court's role is not to evaluate employee performance and to determine whether an employer correctly assessed its employees' abilities. After all, the employer interacts with the employees year round and is in far better a position than a court to assess their performance. Instead, as the Eleventh Circuit has repeatedly stated, "[t]he question to be resolved is not the wisdom or accuracy of [the employer's] conclusion . . . or whether the decision to [give Plaintiff a 'Highly Effective' rating] was prudent or fair. Instead, our sole concern is whether unlawful discriminatory animus motivated the decision." *Alvarez*, 610 F.3d at 1266.

      Based on the evidence before this court, the court finds that Plaintiff failed to establish that discriminatory animus factored in her rating. To the contrary, Defendant had legitimate, non-discriminatory reasons for rating Plaintiff "Highly Effective." Specifically, Defendant contends that Plaintiff did not earn an "Exemplary" rating for 2007 because she (1) struggled with completing her

weekly OSHA 31 reports in a timely manner; (2) had the least number of health samples of the industrial hygienists at the Birmingham office; (3) declined an offer by Sanchez to attend the agency's National Emphasis Program; (4) performed fewer safety inspections during 2007 than Ronald Hynes; and (5) and did not volunteer to assist with the inventory of equipment. Doc. 16-3, at 5-7; doc. 16-5. Significantly, Plaintiff failed to rebut each of these articulated reasons, and instead focused on the alleged discriminatory assignment of Hurricane and Safety Initiatives, and Fatalities to males and non-minorities, and, in particular, the rating Defendant issued to Hynes. Doc. 17, at 6-7. Plaintiff's failure to rebut these contentions is fatal because "[i]n order to avoid summary judgment, a plaintiff must produce sufficient evidence for a reasonable factfinder to conclude that *each* of the employer's proffered nondiscriminatory reasons is pretextual." *Chapman v. AI Transport*, 229 F.3d 1012, 1037 (11th Cir. 2000) (emphasis added) (citing *Combs v. Plantation Patterns*, 106 F.3d 1519, 1543 (11th Cir. 1997)).

    Again, this court is not a super personnel board that questions the wisdom of an employer's assessment about its employees abilities. *Alvarez*, 610 F.3d at 1266. Stated differently, it is simply not this court's role to evaluate the performance of employees in order to ascertain whether the employer rated each accurately. Therefore, as it relates to Plaintiff's contention that she performed at

the "Exemplary" level in 2007, she failed to meet her burden of establishing that discriminatory animus impacted or influenced the rating she received. In short, "the fact that [Plaintiff] thinks more highly of her performance is beside the point. The inquiry into pretext centers on the employer's beliefs, not the employee's beliefs and, to be blunt about it, not on reality as it exits outside of the decision maker's head." *Alverez*, 610 F.3d at 1266.

> 2. **Plaintiff Failed to Establish that Defendant Rated Her Lower Than Hynes for Discriminatory Reasons.**

As stated previously, Plaintiff's primary focus for her discrimination claims is on the rating Defendant issued Hynes. Specifically, Plaintiff contends that her "inability to receive an 'exemplary' rating is due to" unequal assignments – Hynes received 5 fatalities assignments, whereas, Plaintiff only received one. Doc. 17, at 6-7. The court will treat Plaintiff's contentions about Hynes' rating jointly with her second contention that Defendant discriminated against her by giving her less favorable assignments than similarly situated non-African American male employees. As it relates to both contentions, Hynes is the only individual that Plaintiff contends is a proper comparator. Doc. 1, at 3; doc. 17, at 5. Therefore, to succeed on her claims, Plaintiff must show that she is similarly situated to Hynes.

### a. Plaintiff Cannot Establish a *Prima Facie* Case of Race and Gender Discrimination.

To establish a *prima facie* case of disparate treatment, Plaintiff must show: (1) membership in a protected class; (2) that she is qualified for the position; (3) that she suffered an adverse employment action; and (4) that Defendant treated her less favorably than a similarly-situated individual outside her protected class. *Maynard v. Bd. of Regents*, 342 F.3d 1281, 1289 (11th Cir. 2003). "To show that employees are similarly situated, the plaintiff must show the 'employees are similarly situated in all relevant respects.'" *Knight v. Baptist Hosp. of Miami, Inc.*, 330 F.3d 1313, 1316 (11th Cir. 2003) (citation omitted). "The comparator must be nearly identical to the plaintiff to prevent courts from second-guessing a reasonable decision by the employer." *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1091 (11th Cir. 2004) (citation omitted). In other words, to prevail on her race and gender discrimination claims, Plaintiff must, at a minimum, show that she and Hynes are similarly situated.

Defendant contends that Plaintiff cannot establish a *prima facie* case because, as an industrial hygienist, she holds a different position and has different job requirements than Hynes, a safety specialist. Doc. 14, at 17 & 19.[1] Plaintiff

---

[1] An industrial hygienists, in part, "provides advisory services to private employers and less experienced employees within the agency . . .[,] generally promotes industrial practices that

disagrees and contends that "Defendant's argument . . . that Mr. Hynes is not a proper comparator . . . . is without merit."[2] Doc. 17, at 5. Rather, Plaintiff maintains that all response team members work under the same performance standards, a fact she claims Ciancio confirmed when he stated, "Neither [group] are [sic] held in higher responsibility then [sic] the other; unless they are assigned that specifically from their Team Leader or the Area Director." Doc. 16-1, at 6; doc. 17, at 6. However, that both groups are held to the same performance standards does not mean they perform identical duties. In fact, the evidence presented to this court shows that industrial hygienists and safety specialists perform different duties. Doc. 16-4, at 4 & 8. Moreover, Plaintiff's own

---

are consistent with the goals and principles of industrial hygiene . . .[,] and conducts inspections of worksites to observe work practices and environmental conditions for hazards to health and safety, and to detect recognized health hazards." Doc. 16-4, at 4. Whereas, a safety specialist, in part "conducts inspections and accident investigations within assigned geographic boundaries of establishments . . . .The incumbent determines compliance with published standards, identifies hazardous conditions or practices, proposes citations and monetary penalties, and provides technical assistance to employers and employees to achieve safe working environment . . . . Plans, schedules and conducts inspections and accident investigations in establishments and worksites where there is a strong probability of encountering hazardous work processes and materials . . . ." *Id*., at 8.

[2]Plaintiff asserts that Hynes is a Native American male and so "[t]here is no dispute that Mr. Hynes is of a different race and gender." Doc. 17, at 6. Additionally, Hynes received an "Exemplary" rating whereas Plaintiff received "Highly Effective, " thus, "[t]he ratings explanations show that a jury is in the best position to determine that [Plaintiff] was the victim of discrimination." *Id*., at 6. However, the fact that Hynes is a different race and gender and received a higher performance rating does not automatically make him a valid comparator.

testimony belies her assertion that she considered Hynes a comparator:

> Q: Regarding your complaint where you allege that you were discriminated against in fiscal year 2007 performance appraisal, is Mr. Hynes the person, the comparator that you allege was treated differently than you?
>
> . . . .
>
> A: That was not my comparator at the time, no.

Doc. 15-1, at 13-14. While obviously Plaintiff may not have meant that she did not consider Hynes a proper comparator "at the time" because he performed different tasks, her testimony is significant nonetheless on the issue of whether she and Hynes are similarly situated in all relevant respects.

In the final analysis, the law is clear that "[t]he comparators must perform jobs similar to the plaintiff's. Thus, the plaintiff must show that, in her job, she shared the same type of tasks as the comparators." *Cooper v. Southern Co.*, 390 F.3d 695, 725 (11th Cir. 2004) (overruled on other grounds). Here, Hynes is not a proper comparator since he and Plaintiff had different responsibilities and positions, – a fact which even Plaintiff acknowledges. *See* doc. 16-4, at 4-11; doc. 15-1, at 13-14. Therefore, Plaintiff's reliance on Hynes to prove her claims is unavailing.

### b.   Defendant's Alleged Discrimination Concerning Work Assignments and Performance Standards.

Plaintiff contends also that Ciancio's discriminatory assignments prohibited Plaintiff "from achieving the statistical comparative numbers and allow[ed] males to advance further within the department and up the Government's pay scale ladder." Doc. 17, at 7. Allegedly, "an obvious disparity exists regarding assignments that would allow [Plaintiff], and other African-American females, to achieve greater success." *Id*. Furthermore, Plaintiff contends "that there was gender and racial bias in the Agency based on the positions that suppose – that we occupy." Doc. 15-1, at 16. Finally, Plaintiff maintains that her "inability to receive an 'exemplary' rating [was] due to Mr. Ciancio's assignment of (1) Hurricane and Safety initiative and (2) Fatalities to males and non-minority members." Doc. 17, at 6-7. However, despite making this contention, Plaintiff failed to specifically allege an additional comparator besides Hynes to support her contentions. Therefore, to the extent Plaintiff is referring to other employees, her claim fails due to her failure to provide the necessary supporting evidence.

Moreover, the gender claim fails also because both teams, including Hynes' team, have African American female members, which undermines Plaintiff's contention of discriminatory assignments "based on the positions . . . that we

occupy." Doc. 15-1, at 16. Furthermore, as it relates to Plaintiff's own team, Ciancio rated Plaintiff higher than Plaintiff's male counterpart, McCann. Consequently, Plaintiff has no credible basis to contend that Ciancio treated her less favorably than McCann because of gender or race, for that matter, since McCann is also African American. Finally, in response to Plaintiff's contention that "Management has used the assignment of Fatalities and the Hurricane and Safety initiatives to . . . deny the women and minority members" a prominent position, Ciancio stated that "[a]ll compliance officers are given an opportunity to volunteer for any duty especially for Hurricane and Safety Initiatives" and that Plaintiff failed to volunteer even when Ciancio personally solicited Plaintiff to do so. Doc. 16-1, at 5. Plaintiff's failure to refute this contention supports Ciancio's contention that he treated Plaintiff no differently from the other members of the team. Accordingly, Plaintiff's *prima facie* case fails for her discriminatory assignment claim.

### 2. **Plaintiff Failed to Produce Evidence that Defendant's Proffered Reason for Her "Highly Effective" rating was Pretextual.**

Alternatively, even if Plaintiff can establish a *prima facie* case, her discrimination claims still fail because she cannot show that the articulated reason for her "Highly Effective" rating is pretextual. To establish pretext, Plaintiff

"must demonstrate 'such weakness, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence.'" *Sampath v. Immucor, Inc.*, 271 F. App'x 955, 960 (11th Cir. 2008) (citing *Combs v. Plantation Patterns*, 106 F.3d 1519, 1538 (11th Cir. 1997)). As stated previously, Defendant articulated non-discriminatory reasons for Plaintiff's "Highly Effective" rating, which Plaintiff never addressed. *See supra* at (A)(1). Moreover, Defendant also presented unrebutted evidence in support of the rating it issued Hynes: (1) Hynes assisted in training personnel in the field and within the office on construction inspections and construction methods; (2) conducted over 30 inspections as part of the "Swept up in Safety" special emphasis program; (3) conducted 17 interventions with employers; (4) completed the Department of Labor's Learn2 University training course; assisted the Area Director in processing case files during the absence of a Team Leader; (5) expeditiously processed complaints as duty officer, helping the agency exceed it goals; (6) volunteered as a duty officer in another employee's absence or if the assigned employee was overloaded with work, even if it meant adjusting his own schedule and changing his plans; (7) accurately gathered, built, enforced, recommended and researched all required information for all case files and investigative work

conducted; and (8) completed all forms accurately and timely. Doc. 16-3, at 6-7; doc. 16-9. These articulated reasons rebut Plaintiff's contentions that unlawful discriminatory animus motivated the ratings decisions. To the contrary, they show that Defendant had a business reason for rating Hynes as "Exemplary" and Plaintiff as "Highly Effective." While Plaintiff obviously disagrees with the ratings, it is simply not this court's role "to second-guess the business judgment of employers." *See Combs*, 106 F.3d at 1543. Finally, the court notes that although Plaintiff alleges gender and race discrimination, she received a higher performance rating than three males, one of whom, Keith, is a Caucasian male – the very gender and race Plaintiff contends Defendant favors. Doc. 16-8, at 2. In other words, the facts do not support Plaintiff's contentions. In the final analysis, Plaintiff fails to show that discriminatory animus motivated Defendant's decision to rate her as "Highly Effective." Therefore, summary judgment is due on her race and gender discrimination claims.

### B.  Retaliation claim

Finally, Plaintiff alleges that Defendant retaliated against her by issuing her a "Highly Effective" rating, instead of "Exemplary," because she "participated in . . . protected activity by submitting an affidavit [in April 2006] and speaking with an EEO investigator regarding a pending complaint of discrimination" filed by

another employee. Doc. 1, at 5; *see generally* doc. 15-1, at 19-20. Specifically, Plaintiff contends "the only potential action Sanchez and Ciancio can take against an 'Exemplary' employee is to knock her back to 'Highly Effective' and such an action can only be taken when the yearly evaluations come around." Doc. 17, at 9.

"To establish a claim of retaliation . . . , a plaintiff must prove that [s]he engaged in statutorily protected activity, [s]he suffered a materially adverse action, and there was some causal relation between the two events." *Goldsmith v. Bagby Elevator Co., Inc.*, 513 F.3d 1261, 1277 (11th Cir. 2008). A plaintiff proves her claim if she provides sufficient evidence that her employer had knowledge of the protected expression and "that there was a close temporal proximity between this awareness and the adverse . . . action." *Higdon v. Jackson*, 393 F.3d 1211, 1220 (11th Cir. 2004). Therefore, in order to succeed on her retaliation claim, Plaintiff must show that Ciancio and Sanchez knew that Plaintiff engaged in protected activity, i.e., submitted an affidavit in an EEO investigation, and issued her the "Highly Effective" rating within a close temporal proximity thereafter.

### 1. **Plaintiff Fails to Show Ciancio and Sanchez Knew That Plaintiff Participated in a Protected Activity**.

When asked what facts, if any, Plaintiff has to contradict Sanchez's or Ciancio's contention that they had no knowledge of Plaintiff's involvement in

McCann's EEO matter, doc. 16-1, at 9; doc. 16-2, at 8, Plaintiff responded that the request for an affidavit was "sent via the e-mail, which is, in my experience, since filing this, a perfect medium for the Agency to monitor what's sent on there. That's number 1. Number 2. It was common knowledge throughout the office that people were being requested by the investigator to make statements." Doc. 15-1, at 20. Plaintiff contends further that although Ciancio and Sanchez never asked her whether she provided a statement to the investigator, her participation was common knowledge nonetheless because other individuals asked her about it. *Id.*

These contentions, however, are insufficient to establish that Ciancio and Sanchez knew about Plaintiff's affidavit for several reasons. First, an investigator sending an email to ask for information does not mean that Ciancio and Sanchez knew which specific employees agreed to provide an affidavit to the investigator or that those who did, in fact, provided an affidavit favorable to McCann. Second, that some individuals asked Plaintiff if she submitted an affidavit is insufficient to impute knowledge of Plaintiff's participation to Ciancio and Sanchez, especially since the employees who asked Plaintiff may have decided not to disclose Plaintiff's participation to anyone. Critically, Plaintiff has no evidence that these employees, in fact, relayed this information to Ciancio and Sanchez. In the final analysis, outside of Plaintiff's contention that her participation was purportedly

"common knowledge," – the determination of which, is speculative at best –, she has no credible basis to establish that the "common knowledge" extended to Ciancio and Sanchez. Accordingly, Plaintiff failed to establish the causal connection between her protected activity and the adverse employment action.

    **2.**    **There is Not a Close Temporal Proximity Between the Affidavit and the "Highly Effective" Rating.**

Additionally, Plaintiff's retaliation claim fails because eighteen months lapsed between the alleged protected activity in April 2006 and the October 2007 performance evaluation. "The cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be 'very close.'" *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (holding action taken 20 months later suggests, by itself, no causality at all). Here, even ignoring that Plaintiff failed to establish that Ciancio and Sanchez knew about her affidavit, the eighteen months between the affidavit and the purported adverse employment action is too great a time lapse for Plaintiff to satisfy the close temporal proximity requirement. Therefore, summary judgment is also due on the retaliation claim.[3]

---

[3] Summary judgment is also warranted for the same reasons as Plaintiff's discrimination claims – i.e. Defendant articulated legitimate, non-retaliatory reasons for the rating, which

## IV.  CONCLUSION

Based on the record before it, no evidentiary basis exists for the court to find that Plaintiff can establish a *prima facie* case for any of her claims, or alternatively, that Plaintiff can show that Defendant's proffered reasons for her "Highly Effective" rating are pretextual.  Because there are no genuine issues of disputed fact, Defendant's motion for summary judgment is due to be **GRANTED**.  The court will issue a separate order granting the motion and dismissing this case.

**DONE** this 30th day of April, 2012.

_____
**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE

---

Plaintiff failed to rebut.  *See supra* A(1) and A(2).